UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANET CANARY,

    Plaintiff,

v.

MEDTRONIC, INC.,

    Defendant.

_____/

Case No. 16-11742

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [44]**

Plaintiff Janet Canary brought this suit against Defendant Medtronic, Inc., asserting product liability and fraud claims. Her claims stem from a severe allergic reaction allegedly triggered by the implantation of a spinal cord stimulator manufactured by Defendant. This Court granted Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) in part and denied it in part, dismissing Plaintiff's product liability claims but allowing her fraud claim to move forward. (*See* Dkt. #24.) The matter is now before the Court on Defendant's motion for summary judgment on the remaining fraud claim. (Dkt. #44.) The Court heard oral arguments on the motion on November 7, 2018. For the reasons discussed below, the Court DENIES Defendant's motion.

**I.    Background**

    **A.    Plaintiff's Allergic Reaction and Treatment**

Plaintiff was involved in a motor vehicle accident and sustained serious injuries to her spine in February of 2008. (Dkt. #44-2, Pg ID 1356.) Over the next few years,

1

Plaintiff underwent a number of surgeries to address these injuries. (*Id.* at Pg ID 1373.) Following her surgeries, Plaintiff's physicians recommended that she consider the implantation of the Medtronic PrimeAdvanced spinal cord stimulator to address her chronic neck and back pain. (*Id.*) Defendant designs, manufactures, markets, and sells this device. (*See* Dkt. #47-2.)

Prior to having the stimulator implanted, Plaintiff met with her physicians and with Ms. Violet Peplowski, a specialist representing Defendant, on three occasions to discuss the possibility of implanting the device.[1] (Dkt. #44-2, Pg ID 1385.) Plaintiff alleges that during each of these meetings, she mentioned her latex and rubber allergies. (*Id.*) On each occasion, Ms. Peplowski allegedly assured her that latex and rubber allergies did not prevent implantation of the stimulator and that Defendant had not had a patient have an allergic reaction to any of the components of the spinal cord stimulator. (*Id.*) Ms. Peplowski testified during her deposition that she was aware of the potential for an allergic reaction to a spinal cord stimulator and would never tell a patient that the stimulator was safe and would not cause a reaction. (Dkt. #44-3, Pg ID 1456, 1458.)

On May 16, 2013, Plaintiff had the permanent spinal cord stimulator implanted. (*Id.* at Pg ID 1384.) A few days later, on May 22, 2013, Plaintiff had an appointment with Dr. Andres Munk during which her spinal cord stimulator was activated. (*Id.* at Pg

---

[1] Plaintiff also underwent a trial implant prior to having the permanent stimulator implanted, but she alleges that she did not have an allergic reaction to that device because it was pulled out of her back on the same day of the implant. (Dkt. #44-2, Pg ID 1379.)

ID 1395.) Shortly thereafter, Plaintiff allegedly developed hives over her entire body. (*Id.* at Pg ID 1396.)

On May 26, 2013, Plaintiff went to the Henry Ford Clinic near her home, where she was treated by Dr. Sujatha Prasad. (Dkt. #44-14, Pg ID 1910.) Dr. Prasad noted that Plaintiff presented with an allergic reaction, skin rash, and hives. (*Id.* at Pg ID 1911.) Plaintiff also reported having trouble breathing and swallowing. (*Id.* at Pg ID 1912.) She was prescribed medications for her symptoms. (*Id.* at Pg ID 1915.)

Plaintiff called Ms. Peplowski on or around May 26, 2013, and informed her that she was having an allergic reaction to the spinal cord stimulator, including symptoms of a fever, vomiting, difficulty breathing, swelling of her hands and face, and that she was covered in hives. (Dkt. #44-2, Pg ID 1394.) Plaintiff testified that Ms. Peplowski responded by stating that Defendant had another patient who had an allergic reaction to the spinal cord stimulator and was now on medication. (*Id.*)

On May 28, 2013, Plaintiff was admitted to the intensive care unit at the McLaren Medical Center in Mount Clemens, Michigan. (Dkt. #44-8, Pg ID 1693.) She was treated there by Dr. Dheeraj Thammineni and eventually discharged on May 31, 2013. (*Id.*) Dr. Thammineni testified that Plaintiff complained of abdominal pain and inflammation of the bowel along with the hives. (*Id.* at 1691.)

On June 5, 2013, Plaintiff followed up with her primary care physician, Dr. Paul Paonessa. (Dkt. #44-10, Pg ID 1764.) Dr. Paonessa noted that Plaintiff had hives on the trunk, and suggested she speak to Dr. Munk to discuss the possibility of having the stimulator removed. (*Id.* at 1765.) On June 13, 2013, Plaintiff underwent a procedure to remove the spinal cord stimulator. (Dkt. #44-10, Pg ID 1775-76.) On June 14, 2013,

3

the day after removal of the stimulator, Plaintiff had another follow-up appointment with Dr. Paonessa. (*Id.* at Pg ID 1775.) Dr. Paonessa did not indicate in his notes that Plaintiff had hives. (*Id.* at Pg ID 1776.)

On June 26, 2013, Plaintiff had a surgical follow-up appointment with Dr. Munk. (Dkt. #44-5, Pg ID 1536.) Dr. Munk's noted stated that "[u]nfortunately she cannot have another spinal cord stimulator due to the fact that she has the latex and rubber allergy." (*Id.* at Pg ID 1539.) During his deposition, he testified that his note was a reflection of the patient's wishes. (*Id.*)

Later, in September of 2014, Plaintiff saw an allergist, Dr. Pamela Georgeson, for her gastrointestinal issues and allergies. (Dkt. #44-11, Pg ID 1809.)

**B.    The Parties' Expert Testimony**

Plaintiff has not retained any expert witnesses, but instead indicates that she intends to rely on the testimony of her treating physicians, Drs. Thammineni, Patel, Paonessa, Georgeson, Kerr and Prasad. (*See* Dkt. #44-6.) Relevant to the issue of causation, Dr. Prasad was asked during his deposition, "you stated previously in your testimony that the spinal cord stimulator could be a potential cause of the allergic reaction, but it's something you can't decide whether it was or was not?;" he responded "yes." (Dkt. #44-14, Pg ID 1921.)

Dr. Thammineni, the internal medicine doctor who treated Plaintiff when she was admitted to the intensive care unit on May 28, 2013, explained during his deposition that while he stated that Plaintiff had "contact dermatitis secondary to spinal cord stimulator" in his notes, he recommended that she get allergy and skin testing to ascertain exactly what caused the reaction. (Dkt. #44-8, Pg ID 1694.) When Dr. Thammineni was asked

4

if the spinal cord stimulator was more of a possibility than other causes, he responded with a "yes." (*Id.* at Pg ID 1704.) And when asked "[c]an you say to a reasonable degree of medical certainty that the hives were caused by the implantation of the spinal cord stimulator on May 16th and not some other source," he stated that the stimulator was "one of the top possibilities." (*Id.* at Pg ID 1705.)

Dr. Kerr, Plaintiff's dermatologist, opined during her deposition that

> [t]here was something around the time of the surgery that triggered a hive-like reaction. The device was used, but other things were used at the time of the procedure, such as prep and – however, when the device was removed, her hives and itching in that area went away, so there's an association with that. Unfortunately, there's no test for [these types of] reactions in this situation.

(Dkt. # 44-12, Pg ID 1854.) Dr. Kerr testified that her focus was only on Plaintiff's skin and not on the other symptoms Plaintiff alleges she had after the implantation of the device. (*Id.* at Pg ID 1856.)

Dr. Pamela Georgeson, an allergist who treated Plaintiff in September of 2014, testified, in part, as follows about the cause of Plaintiff's allergic reaction:

> Q: You stated it was plausible that she had an allergic reaction to the device; is that correct?
> A: I think everything is plausible, but, yes.
> Q: Okay. The fact that she reported she had hives after the device, and her hives stopped after the device was removed, would that further support the conclusion that it was plausible that the device caused a reaction?
> [Defense counsel]: Object to the form.
> The witness: I would – yes.
> [Plaintiff's counsel]: And earlier you testified regarding the correlation and the difference between general hives versus local hives.
> A: Yes.
> Q: Do you believe the stimulator caused the local hives she reported to you?
> A: Yes.
> [Defense counsel]: Object to the form.
> [Plaintiff's counsel]: That was a yes?
> A: Yes.

5

(Dkt. #44-11, Pg ID 1816-17.)

Defendant has retained three expert witnesses who have filed expert reports. (*See* Dkt. #44-7.) Two of these experts opined that the stimulator was to "a reasonable degree of medical certainty" not the cause of Plaintiff's medical issues and that there are many potential alternative causes for the reaction, such as food, medications, or surgical prep. (*Id.* at Pg ID 1613-14, 1642-44.)

## II. Summary Judgment Standard

It is well established that summary judgment under Federal Rule of Civil Procedure 56 is proper when "'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (quoting Fed. R. Civ. P. 56(a)). When reviewing the record, "'the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.'" *Id.* at 327 (quoting *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). Furthermore, the "'substantive law will identify which facts are material,' and 'summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 327 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

When considering the material facts in the record, a court must bear in mind that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

6

## III. Analysis

Plaintiff's fraud claim is based on the theory that Defendant's representative made misrepresentations to Plaintiff about the safety of the spinal cord stimulator for someone with known latex and rubber allergies, she relied on those misrepresentations in making a decision to have the stimulator implanted, and she suffered a severe allergic reaction as a result. To establish a claim of fraud under Michigan law, a plaintiff must prove the following elements:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage.

*M&D, Inc. v. McConkey*, 585 N.W.2d 33, 36 (Mich. Ct. App. 1998) (citations omitted). Plaintiff must also "prove that the fraud committed actually and proximately caused the damages suffered." *Kheder Homes at Charleston Park v. Charleston Park*, No. 307207, 2014 Mich. App. LEXIS 3, at *7 (Mich. Ct. App. Jan. 2, 2014) (citations omitted). While "the plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred," "plaintiff is not required to produce evidence that positively eliminates every other potential cause. Rather, the plaintiff's evidence is sufficient if it 'establishes a logical sequence of cause and effect, notwithstanding the existence of other plausible theories, although other plausible theories may also have evidentiary support.'" *Skinner v. Square D Co.*, 516 N.W.2d 475, 478-80 (Mich. 1994) (quoting *Mulholland v. DEC Int'l Corp.*, 443 N.W.2d 340, 349 (Mich. 1989)).

7

Defendant argues that, under Michigan law, expert testimony is required to establish causation and therefore Plaintiff cannot satisfy her burden of proof with regards to causation because no expert has opined that within a reasonable degree of medical certainty the spinal cord stimulator caused Plaintiff's alleged allergic reaction. Plaintiff responds by arguing that expert testimony is not always required to establish causation and, even if it were required, she has presented sufficient evidence and expert testimony to create an issue of material fact regarding causation.

Defendant cites to a number of cases in support of its argument that expert testimony is required to establish causation in this case. Several of those cases, however, are medical malpractice cases in which the expert testimony was required to establish the applicable standard of care and demonstrate that the professional breached that standard. *See Elher v. Misra*, 878 N.W.2d 790, 791 (Mich. 2016); *Bryant v. Oakpointe Villa Nursing Ctr., Inc.*, 684 N.W.2d 864, 867 (Mich. 2004).[2] And even in the context of negligence claims brought against professionals, expert testimony is not always required. The need for expert testimony depends on "whether the alleged acts of negligence raise issues that are within the common knowledge and experience of the jury or, alternatively, raise questions involving medical judgment." *Bryant*, 684 N.W.2d at 873-76 (finding that expert testimony was required to establish the standard of care

---

[2] Defendant also cites to the case of *Amorello v. Monsanto Corp.*, 463 N.W.2d 487 (Mich. Ct. App. 1990). In that case, however, the plaintiffs had alleged that they suffered medical problems as a result of exposure to a chemical that leaked from an electrical transformer in their backyard. *Id.* at 488-89. There, not only was the evidence insufficient to establish the causal link between the plaintiffs' health problems and the alleged exposure but it also did not demonstrate that the chemical in the soil came from the transformer in the first place. *Id.* at 490. Here, there is no dispute that the Plaintiff had the stimulator implanted and that it could have led to the allergic reaction.

for some of the plaintiff's claims but not for others) (citation and quotations omitted); *see also Elher*, 878 N.W.2d at 796 (holding that expert testimony was required to prove the applicable standard of care and a breach of that standard in part due to the belief held by some professionals that the alleged conduct did not necessarily constitute a breach of the standard of care).

Plaintiff responds by arguing that expert testimony is not always required to establish causation and points to the case of *Genna v. Jackson*, 781 N.W.2d 124, 127-28 (Mich. Ct. App. 2009), for that proposition. In *Genna*, the plaintiffs alleged that defendant's negligence led to mold in her condominium which caused plaintiffs to become ill. The defendant had urged the court to find that direct expert testimony was required to establish causation, not inferences. *Id.* at 129. However, the court declined to do so, reasoning that "[t]his is not a complicated case: the children were sick, the children were removed from the home, the mold was discovered, and the children recovered." *Id.* at 130. The court also noted that there was "ample circumstantial evidence" that would facilitate an inference of causation. *Id.* That circumstantial evidence included an expert testifying that mold is toxic and can cause toxic reactions in people. *Id.* The plaintiff's allergy doctor had also concluded that the mold exposure was a "possible contributing factor" to the symptoms. *Id.*

The court in *Genna* relied on the case of *Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 425 (6th Cir. 2009). In *Gass*, the plaintiffs alleged that they were injured when defendants negligently sprayed pesticides into their hotel room. *Id.* at 421. The Sixth Circuit, applying Michigan law, refused to require expert testimony to establish causation, noting that the relevant burden of proof was a preponderance of the

9

evidence and that plaintiffs may survive summary judgment if a reasonable jury could find that it was more likely than not that defendants' negligence caused their injuries. *Id.* at 431. The court concluded that there was "ample evidence to demonstrate that at least one of the chemicals [d]efendants routinely used to exterminate cockroaches . . . [wa]s capable of causing their symptoms." *Id.* at 432. The court also noted that it was significant that plaintiffs had experienced symptoms within fifteen minutes of their alleged exposure to the pesticides in their hotel room. *Id.*

The courts in both *Genna* and *Gass* distinguished the facts in those cases from the facts in *Kalamazoo River Study Grp. v. Rockwell Int'l Corp.*, 171 F.3d 1065 (6th Cir. 1999). In that environmental contamination case, the defendant had provided scientific evidence showing that the chemical from the leak had never reached the nearby waterway and therefore could not have caused the contamination along the shoreline. *Kalamazoo River*, 171 F.3d at 1069. The Sixth Circuit therefore required admissible expert testimony to rebut that scientific evidence. *Id.* at 1072. The court in *Genna* noted that while defendant had set forth a virus as an alternate cause for the plaintiffs' illness, unlike *Kalamazoo River*, it had not submitted any scientific evidence that the mold "could not" have caused the plaintiffs' injuries. *Genna*, 781 N.W.2d at 129. Similarly, in *Gass*, the Sixth Circuit noted that, unlike *Kalamazoo River*, the defendant had not introduced objectively verifiable scientific evidence proving an absence of causation. *Gass*, 558 F.3d at 433.

While the case here may be somewhat more complex than *Genna* and *Gass*, the analyses in those cases guides the Court's analysis here. Plaintiff has similarly set forth sufficient evidence supporting an inference that the spinal cord stimulator caused her

allergic reaction. First, there is evidence of the sequence of events, namely that Plaintiff broke out in hives after the stimulator was implanted and that those hives were gone after the stimulator was removed. Moreover, several of her treating physicians have provided expert testimony on the issue of causation. More specifically, Dr. Prasad stated that the stimulator was a possible cause of the allergic reaction, *see* dkt. #44-14, Pg ID 1914, Dr. Thammineni responded "yes" when asked if the stimulator was more of a possibility than other causes for the allergic reaction, *see* dkt. #44-8, Pg ID 1704, and Dr. Georgeson stated "yes" when asked if she felt that the stimulator caused Plaintiff's local hives, *see* dkt. #44-11, Pg ID 1817.[3] And while Defendant has pointed to a number of possible causes that could have led to Plaintiff's injury, similar to *Genna* and *Gass*, there is no evidence that the device could not have caused that injury. Defendant's own experts, who have opined that to a reasonable degree of certainty the stimulator did not cause the allergic reaction, did not eliminate the possibility that it could have done so. *See, e.g.*, Dkt. #44-7, Pg ID 1613 (Defendant's expert stating that "[a]llergic reactions to the components of spinal cord stimulators are extremely rare" but not eliminating their possibility). In sum, the Court finds that Plaintiff has set forth sufficient evidence on causation to survive summary judgment.

---

[3] In a footnote in its reply brief, Defendant argues that any expert testimony provided by Dr. Thammineni and Dr. Georgeson regarding causation is unreliable and therefore inadmissible under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993). The general rule, however, is that "a treating physician may provide expert testimony regarding a patient's illness, the appropriate diagnosis for that illness, and the cause of that illness." *Gass*, 558 F.3d at 426; *see also Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 870 (6th Cir. 2007) (reasoning that "doctors may need to determine the cause of an injury in order to treat it. Determining causation may therefore be an integral part of 'treating' a patient"). Because Dr. Thammineni and Dr. Georgeson were Plaintiff's treating physicians, they may provide expert testimony regarding her illness and the cause of that illness.

11

**IV.    Conclusion**

For the foregoing reasons, the Court DENIES Defendant's motion for summary judgment on Plaintiff's fraud claim.

SO ORDERED.

s/Nancy G. Edmunds<br>
Nancy G. Edmunds<br>
United States District Judge

Dated: November 13, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 13, 2018, by electronic and/or ordinary mail.

s/Lisa Bartlett<br>
Case Manager